INTERCARGO INSURANCE COM-
PANY, a/s/o Express Line Cor-
poration, Plaintiff,

v.

CHINA AIRLINES, LTD., Defendant.

No. 98 Civ. 1724RMB.

United States District Court,
S.D. New York.

Feb. 4, 1999.

Stephen A. Frank, Badiak, Will & Ma-
loof, New York City, for plaintiff.

Christopher Carlsen, Condon & For-
syth, New York City, for Defendant.

## ORDER

BERMAN, District Judge.

This is an action by Intercargo Insur-
ance Company ("Intercargo" or "Plaintiff")
against China Airlines, Ltd. ("CAL" or
"Defendant") seeking damages in the
amount of $22,600 for the non-delivery of
five cartons of computer parts shipped
from Los Angeles to Hong Kong via Tai-
pei, Taiwan, on or about June 29, 1996, and
pursuant to CAL Air Waybill No. 297 6300
8595.

The parties agree that the Convention
for Unification of Certain Rules Relating
to International Transportation by Air,
Oct. 12, 1929, 49 Stat. 3000, T.S. 876
(1934), reprinted in the note following 49
U.S.C.A. § 40105 ("Warsaw Convention"),
applies to this shipment and to Intercar-
go's claims.

CAL asserts that, pursuant to Article
22(2) of the Warsaw Convention, its liabili-
ty, if any, for the non-delivered goods is
limited to the maximum sum of $9.07 per
pound of cargo lost by CAL. Thus, based
upon the weight of the non-delivered
goods, its liability to Intercargo is limited
to the maximum sum of $795.69.

Intercargo alleges that the Article 22(2)
limitation of liability is not applicable to
this claim because CAL's air waybill was
defective in that it failed to state the
"agreed stopping place" by name (i.e. Tai-
pei) and did not adequately incorporate
"agreed stopping place" information by
reference in accordance with a line of cases

decided by the Court of Appeals for the Second Circuit.

The parties have made cross-motions for summary judgment. Oral argument was held on January 27, 1999.

## I. *Background*

The facts of this case are largely undisputed.

The action arises from the partial loss of a shipment of goods carried by CAL from Los Angeles to Hong Kong via Taipei, Taiwan, on or about June 29, 1996, pursuant to CAL Air Waybill No. 297 6300 8595. CAL's waybill was issued by Express Line Corporation ("Express"), the shipper/consignor. Express filled out the information on the waybill and issued its House Air Waybill No. ELC–030338. The shipment contained eleven cartons of computer parts weighing 193 pounds.

CAL Air Waybill No. 297 6300 8595 and Express House Air Waybill No. ELC–030338 list Los Angeles and Hong Kong as the cities of departure and destination, respectively. These waybills also list CAL Flight No. CI317 under the caption "Flight/Date." Neither waybill lists Taipei (or any other location) by name as a stopping place.

Paragraph 3 of the Conditions of Contract set forth on the reverse side of CAL's Air Waybill provides, in part, "[t]he agreed stopping places ... are those places, except the place of departure and the place of destination, set forth on the face hereof or shown in the Carrier's timetables as scheduled stopping places for the route." CAL Flight No. CI317 is listed in CAL's timetables as operating from Los Angeles to Taipei, Taiwan.

After CAL Flight No. CI317 arrived in Taipei, the shipment in question was transferred to CAL Flight No. CI607 and carried to Hong Kong. CAL Flight No. CI607 was a nonstop flight from Taipei to Hong Kong. No mention is made, either directly or by reference, to Flight No. CI607 on either waybill.

Intercargo alleges that when the shipment arrived in Hong Kong, five of the eleven cartons were missing. Intercargo further alleges that CAL did not satisfy Articles 8(c) and 9 of the Warsaw Convention which require designation of agreed stopping places. Specifically, Intercargo asserts that because CAL's air waybill makes no direct mention of Taipei; identifies only CAL Flight No. CI317; and does not make reference to transfer CAL Flight No. CI607 which moved the shipment from Taipei to Hong Kong, the waybill is defective and CAL's liability is not limited under the Warsaw Convention.

CAL asserts that, in accordance with its Conditions of Contract and timetables, the agreed stopping place of Taipei was incorporated by reference into the CAL air waybill by the listing of flight CI317. This, according to CAL, fully satisfied the requirements of Articles 8(c) and 9 of the Warsaw Convention. CAL further argues that a reference to transfer Flight No. CI607 is not required by the Convention or by case law.

Thus, the (narrow) issue before the Court is whether or not CAL's air waybill had to include reference to transfer Flight No. CI607. If this question is answered affirmatively, the Court must also decide whether Intercargo's claims are barred by the alleged negligence of its insured/subroger, Express.

## II. *Discussion*

### A. *Air Waybill*

In general, Article 18 of the Warsaw Convention provides for air carrier liability for loss or damage to goods in transit, while Article 22(2) limits liability for such loss to approximately $9.07 per pound. Article 9 of the Warsaw Convention, however, removes the carrier's limited liability protection if the air waybill does not contain certain "particulars" as set forth in Article 8. *See* Warsaw Convention, Art. 9. *See also Tai Ping Insurance Co., Ltd. v.*

*Northwest Airlines, Inc.*, 94 F.3d 29, 31 (2d Cir.1996).

Among the requisite particulars is a statement of any "agreed stopping places."[1] *See* Warsaw Convention, Art. 8(c). *See also American Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd.*, 999 F.Supp. 543, 545 (S.D.N.Y.1998). Even where an air waybill does not specify the agreed stopping places by name, a waybill that incorporates readily available timetables (which in turn adequately reflect the agreed stopping places) can satisfy the Article 8(c) requirement that it contain the "agreed stopping places" and does not deprive the air carrier of limited liability protection. *See Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1035 (2d Cir.1996), *cert. denied*, 519 U.S. 1116, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997). *See also Tai Ping*, 94 F.3d at 32.

■ CAL asserts that, under *Brink's*, it complied with Article 8(c) of the Warsaw Convention because the agreed stopping place of Taipei, although not mentioned by name, was referenced by the mention of Flight No. CI317 and incorporated in the air waybill by way of the Conditions of Contract set forth on the reverse side of the air waybill. The Conditions of Contract state, in part, "[t]he agreed stopping places . . . are those places . . . set forth on the face hereof or shown in the Carrier's timetables as scheduled stopping places for the route." The argument is that were one to review the timetables for Flight No. CI317, one could ascertain that the cargo would stop in Taipei because Flight No. CI317 would be shown to originate in Los Angeles and terminate in Taipei.

The Court does not accept this argument. That is, while *Brink's* held that an air waybill that incorporates readily available timetables may sometimes satisfy Article 8(c) of the Warsaw Convention, the Second Circuit has further explained the law of agreed stopping places in *Tai Ping*, where it ruled that **"transfer information is [also] necessary when an air waybill incorporates regularly scheduled stops in satisfaction of Article 8(c) by reference to its timetables.** Without notice of the transfer, the shipper could not track its shipment and discover the scheduled stops from the timetables." *Tai Ping*, 94 F.3d at 33. (emphasis added). *See also American Home Assurance Company*, 999 F.Supp. at 547.

Here, CAL Air Waybill 297 6300 8595 failed to list either Taipei by name or to include "transfer information" reflecting that CAL Flight No. CI607 moved the cargo from Taipei to Hong Kong. Under *Tai Ping*, these omissions are fatal to CAL's position. *Tai Ping*, 94 F.3d at 33.[2]

1. Article 8 of the Warsaw Convention provides that, "The air waybill shall contain the following particulars: (a) The place and date of its execution; (b) The place of departure and of destination; (c) The agreed stopping places, provided that the carrier may reserve the right to alter the stopping places in case of necessity, and that if he exercises that right the alteration shall not have the effect of depriving the transportation of its international character; (d) The name and address of the consignor; (e) The name and address of the first carrier; (f) The name and address of the consignee, if the case so requires; (g) The nature of the goods; (h) The number of packages, the method of packing, and the particular marks or numbers upon them; (i) The weight, the quantity, the volume, or dimensions of the goods; (j) The apparent condition of the goods and of the packing; (k) The freight, if it has been agreed upon, the date and place of payment, and the person who is to pay it; (*l*) If the goods are sent for payment on delivery, the price of the goods, and, if the case so requires, the amount of the expenses incurred; (m) The amount of the value declared in accordance with article 22(2); (n) The number of parts of the air waybill; (o) The documents handed to the carrier to accompany the air waybill; (p) The time fixed for completion of the transportation and a brief note of the route to be followed, if these matters have been agreed upon; (q) A statement that the transportation is subject to the rules relating to liability established by this convention."

2. **CAL could readily have preserved limited liability protection either by listing Taipei on the waybill or by adding Flight No. CI607 to the waybill.**

**552**

### B. *Consignor Negligence*

 CAL also argues that Intercargo should be denied relief because "its claims are barred by the negligence of its insured/subroger, Express Line Corporation ..." CAL Reply Mem. at 4. That is, CAL asserts that assuming, *arguendo,* CAL's air waybill did not comply with Article 8(c) of the Warsaw Convention because it did not contain agreed stopping place information, "the failure to include that information was caused solely by the negligence of Express in filling out the waybill incorrectly." *Id.* at 4–5. CAL asserts that, under Article 10 of the Warsaw Convention, "Express was responsible for the correctness of the information in the waybill concerning the stopping places, and is liable for all damages suffered by CAL ... by reason of the incorrectness or incompleteness of such information." *Id.* at 5.

CAL's argument is without merit. Article 10(1) of the Warsaw Convention provides that "[t]he consignor shall be responsible for the correctness of the particulars and statements **relating to the goods** which he inserts in the air waybill." (emphasis added). In *American Home Assurance Company v. Jacky Maeder (Hong Kong) Ltd.,* 969 F.Supp. 184, 189 (S.D.N.Y. 1997), the Court observed that a "leading work" on the Warsaw Convention explains that "only statements of the type required by Article 8(g)–(j), 'e.g. specifications relating to the nature, packing, weight and the external conditions of the goods,' can give rise to consignor liability under Article 10." (citation omitted).[3] Here, the error relates to "agreed stopping places," not to the goods themselves. Express, the consignor, cannot be held liable in this instance.

### III. *Conclusion*

For the foregoing reasons, Intercargo's motion for summary judgment is granted

and CAL's motion for summary judgment is denied.

**SO ORDERED**

---

**3.** The Court also observed that "Article 10 appears not to contemplate claims against the consignor for air waybill errors which do not relate to the goods themselves." *American Home Assurance Company,* 969 F.Supp. at 192 n. 9.